IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JHMELLA NORMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-2351-S-BN |
| | § | |
| TRAVELERS INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Jhmella Norman filed this *pro se* employment action in state court, alleging that The Travelers Indemnity Company (which she incorrectly named as The Travelers Insurance Company) infringed on her federal rights and that she was constructively discharged. After Travelers removed to federal court, *see* Dkt. No. 1, it moved to dismiss Ms. Norman's lawsuit to compel arbitration, *see* Dkt. Nos. 9 & 10. Ms. Norman did not respond.

This action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from the presiding United States district judge.

For the reasons explained below, the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss this action to compel Ms. Norman to address her claims in arbitration.

**Applicable Background**

Ms. Norman is a former employee of Travelers, where she worked as an Insurance Service Representative until October 24, 2018. *See* Dkt. No. 10-1 at 2, 23.

Through this action, she alleges that "Defendant, via its managing agents, flouted and infringed on the federally protected rights of Plaintiff. As a result of this conduct, a constructive discharge. The actions complained of was willful, oppressive, deleterious, and in complete disregard of the rights of the Plaintiff." Dkt. No. 2-2 at 2.

In support of its motion to compel arbitration, Travelers explains, through a declaration from its Vice President Employee Relations:

- It annually requires its employees to complete an electronic certification agreeing to comply with the company's policies, including the Travelers Arbitration Policy. *See* Dkt. No. 10-1 at 4.

- Travelers employees can only access their Travelers email account by logging into Travelers's intranet with their unique employee usernames and passwords. *See id.*

- Annually, an employee receives an email containing a hyperlink to the Travelers Policy Certification screen. *See id.* Ms. Norman received this email on May 3, 2018. *See id.* at 26.

- The certification screen contains a hyperlink to an alphabetized list of most of the company's policies, including the Arbitration Policy, *see id.* at 5, 14, and

- 2 -

expressly directs employees to familiarize themselves with the company's policies – within six weeks – before certifying, *see id.* at 6-7, 10, and further directs them to bring questions to managers and human resource representatives, *see id.* at 26.

- The Travelers Policy Certification screen states:

  I certify that: I understand and agree to comply with and be bound by the applicable Travelers policies (including, without limitation, the mandatory contractual Arbitration Policy, which waives my right to a jury or court trial and requires mandatory arbitration of covered claims between the company and me) and other guidelines, procedures and standards.

*Id.* at 10.

- The Arbitration Policy generally

  makes arbitration the required and exclusive forum for the resolution of all past, present and future employment-related disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise [between Travelers and an employee,] including without limitation contractual claims and claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Worker Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1963, the Fair Labor Standards Act of 1938, the Fair Creditor Reporting Act, the Equal Pay Act of 1963, the Pregnancy Discrimination Act, Genetic Information Nondiscrimination Act, the Worker Adjustment and Retraining Notification Act, the Affordable Care Act, each as amended, and any other federal, state, or local statute, regulation or common law doctrine regarding employment discrimination, retaliation, whistle blowing, conditions of employment or termination of employment. This policy is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq.

*Id.* at 16.

- Specifically, the Arbitration Policy states disagreements between an

employee and the company will seek resolution "by voluntary pre-arbitration steps in the Internal Dispute Resolution Policy ('IDR'), and, where resolution is not achieved for any reason, by mandatory arbitration conducted under the auspices of the American Arbitration Association (AAA)." *Id.* The Arbitration Policy is "a binding contract that applies to Travelers and all persons employed by Travelers." *Id.* The Arbitration Policy "does not require that [Travelers] institute arbitration or follow the steps of the [IDR] before taking disciplinary action of any kind, including termination." *Id.* at 17. The Arbitration Policy "shall survive the termination of the employee's employment." *Id.* at 20.

- And the Arbitration Policy details the two ways an employee accepts the

Arbitration Policy:

> Either the Employee's signature and agreement to the Travelers Policy Certification constitutes Employee's and the Company's acceptance of this policy, including the contractual agreement to arbitrate claims, <u>or</u> Employee's decision to accept employment and/or continue employment after receipt of this policy constitutes acceptance of the terms and conditions of the policy, including without limitation the contractual agreement by Employee and the Company to arbitrate disputes. Therefore, Employee and the Company agree that through this policy, the Company and Employee give up their respective rights to a court or jury trial and that pursuant to the terms of this policy, the Company and Employee are agreeing to arbitrate claims covered by this policy.

*Id.* at 21.

- The electronic system transcript states that Ms. Norman completed her

2018 Travelers Policy Certification "on May 3, 2018 at 1:22pm Pacific Time." *Id.* at 23.

## Legal Standards and Analysis

Regarding a motion to compel arbitration, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that

> ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. Here, Texas state law governing "the validity, revocability, and enforceability of contracts generally" controls the dispute.
>   Under Texas law, a party can compel arbitration only by establishing: (1) the existence of a valid agreement to arbitrate; and (2) that the claims asserted by the party attempting to compel arbitration are within the scope of the arbitration agreement. Both the existence issue and scope issue are decided by the court.
>   A party seeking to compel arbitration must first show that a valid arbitration agreement exists between the parties, a determination governed by traditional state contract principles. Under these principles, the court must determine whether an arbitration agreement exists based on the parties' intent as expressed in the terms of the contract.
>   ...
>   After proving that a valid arbitration agreement exists, the party seeking to compel arbitration must show that the dispute falls within the scope of the agreement. This question – which can include a question about who decides arbitrability – is one of contract interpretation. As a contract interpretation issue, a court can only determine arbitrability by looking to the arbitration clause itself.
>   If the trial court finds that a valid agreement to arbitrate exists and that the claims asserted fall within that agreement, it is required to compel arbitration. If, on the other hand, the trial court determines that there is no arbitration agreement between the parties, or that no dispute between them falls within the scope of the binding arbitration agreement, the court must deny the motion to compel arbitration with prejudice.

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530-32 (5th Cir. 2019) (citations and footnote omitted).

Ms. Norman claims that Travelers's infringing on her federal rights resulted

in a constructive discharge. *See* Dkt. No. 2-2 at 2. Travelers moved to compel arbitration, arguing that Ms. Norman's claims are within the scope of the Arbitration Policy. *See* Dkt. Nos. 9 & 10. And, for the following reasons, Travelers's motion should be granted – the Arbitration Policy is governed by the FAA, *see* Dkt. 10-1 at 16; the FAA provides that state contract law determines the existence of a valid arbitration agreement, *Halliburton.*, 921 F.3d at 530; under Texas law, as further explained below, there is a valid agreement to arbitrate; and that valid agreement covers Ms. Norman's claims.

### I. A valid arbitration agreement exists between Travelers and Ms. Norman.

The first element under Texas contract law to compel arbitration is met, as Travelers has "prove[n] the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam). Specifically, the elements that Travelers has so proven – the five elements required to show a binding contract – are: "'(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.'" *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012) (quoting, in turn, *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 n.17 (5th Cir. 2002))).

*First*, Travelers made an offer to Ms. Norman by sending her the certification

email that she received on May 3, 2018. *See* Dkt. No. 10-1 at 26.

*Second*, Ms. Norman accepted the offer through both ways possible: she accepted by clicking the "I CERTIFY AND AGREE" on the Travelers Policy Certification screen on May 3, 2018, *see id.* at 23, and by continuing to work for Travelers until October 24, 2018, *see id.* at 23; *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 163 (Tex. 2006) ("An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law.").

*Third*, Travelers and Ms. Norman had a meeting of the minds because company policies clearly state the mutual obligations between Travelers and Ms. Norman. *See* Dkt. No. 10-1 at 16-21. "Mutual promises to submit all employment disputes to arbitration is sufficient consideration for such agreement." *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010). Further, Travelers and Ms. Norman gave up their respective rights to litigate disputes by agreeing to the Arbitration Policy. *See* Dkt. No. 10-1 at 21.

*Fourth*, by certifying and continuing employment, Ms. Norman consented to the terms and acknowledged that she was bound by the terms of the Arbitration Policy. *See id.* at 16.

*Fifth*, by certifying, Ms. Norman electronically delivered the contract to Travelers. *See id.*

In addition, the Arbitration Policy is valid. Under Texas law, arbitration

agreements between employers and employees are "generally enforceable" and enforcement is "historically favored" if the agreement is not unconscionable. *In Re Poly-America, L.P.*, 262 S.W.3d 337, 248 (Tex. 2008).

"[C]ircumstances, including not being provided adequate notice of or an opportunity to review or negotiate the arbitration provision, fail to establish procedural unconscionability." *White v. Softlayer Techs., Inc.*, No. 3:15-cv-527-M, 2015 WL 5052365, at *5 (N.D. Tex. Aug. 27, 2015) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002)). So, even if the six weeks Ms. Norman had to review the Arbitration Policy is deemed an inadequate opportunity to review the Arbitration Policy, it would still be conscionable. *See* Dkt. No. 10-1 at 6-7.

And it is not unconscionable for Texas employers to offer at-will employees a take-it-or-leave-it agreement that includes binding arbitration. *See In re Halliburton Co.*, 80 S.W.3d at 572 (observing its prior recognition "that an employer may make … a 'take it or leave it' offer to its at-will employees" and that "[b]ecause an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms" (citations omitted)). So, even if Ms. Norman did not have the opportunity to negotiate the Arbitration Policy, the Arbitration Policy would still be conscionable, because she was an at-will employee.

"Texas courts have found an agreement procedurally unconscionable only in rare circumstances, such as when one of the parties was literally unable to

understand the agreement because of illiteracy or a language difference." *White*, 2015 WL 5052365, at *5 (citing *Fleetwood Enterpr. Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002)). That is not the situation here. And the Court should find that Travelers has established by a preponderance of the evidence the existence of a valid agreement to arbitrate the disputes.

## II. Ms. Norman's claims are within the valid arbitration agreement.

The second element under Texas contract law to compel arbitration is also met. Ms. Norman's federal-rights-infringement and constructive-discharge claims are within the scope of the arbitration agreement, because the Arbitration Policy outlines the mandatory procedure to address disputes between Travelers and an employee regarding federally-protected rights. *See* Dkt. No. 10-1 at 16-17.

"When determining whether a dispute is covered by the scope of an arbitration agreement, the [United States] Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009) (quoting *Safer v. Nelson Fin. Group Inc.*, 422 F.3d 289, 294 (5th Cir. 2005)). Generally, language within the arbitration clause stating that the clause governs all disputes "relating to" the agreement is interpreted as a broad provision covering almost all disputes arising between the parties to a contract. *See Pennzoil Expl. & Prod. Co. v. Armco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). So, even a dispute over the scope of the Arbitration Policy should be decided broadly in favor of arbitration.

"Finally, a district court may dismiss, with prejudice, rather than stay, an action where all the issues are properly subject to arbitration." *White*, 2015 WL 5052365, at *6 (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Adams Techs. Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) ("Although Section 3 of the Federal Arbitration Act directs district courts to stay pending arbitration, we are bound by our precedent which states that dismissal is appropriate 'when all of the issues raised in the district court must be submitted to arbitration.'" (quoting *Alford*, 975 F.2d at 1164))).

Because Travelers proved that a valid arbitration agreement exists by a preponderance of the evidence and that the claims Ms. Norman has asserted fall within the scope of the agreement, the Court is required to compel arbitration under Texas contract law.

**Recommendation**

The Court should grant The Travelers Indemnity Company's motion to compel arbitration [Dkt. No. 9] to resolve Plaintiff Jhmella Norman's employment claims according to the procedures in the applicable arbitration agreement Arbitration Policy's and therefore dismiss this lawsuit with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: May 5, 2020

                                            _____
                                            DAVID L. HORAN
                                            UNITED STATES MAGISTRATE JUDGE